COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| | § | No. 08-22-00238-CV |
| In the Interest of D.R.V., J.I.R., and J.R., | § | Appeal from the |
| Children. | § | 65th Judicial District Court |
| | § | of El Paso County, Texas |
| | § | (TC# 2021DCM1164) |

## MEMORANDUM OPINION

Appellant Mother E.Y.R. appeals the trial court's November 29, 2022, judgment terminating her parental rights to her children, D.R.V., J.I.R., and J.R.[1] We affirm.

### I. Procedural and Factual Background

In a previous suit, E.Y.R. and her mother, A.V., were named permanent possessory conservator and permanent managing conservator, respectively, of D.V.R., J.I.R., and J.R. The Department of Family and Protective Services (DFPS) filed an original petition in the instant suit in March 2021. The same month, the trial court ordered removal of all three children and named

---

[1] To protect the privacy of the parties, we refer to them by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(a), (b)(2).

DFPS their temporary managing conservator. E.Y.R., A.V., and the children's fathers,[2] were named temporary possessory conservators.

Ultimately a bench trial was held in October and November 2022, wherein DFPS sought to terminate E.Y.R.'s parental rights as to all of her children, name A.V. permanent managing conservator of D.V.R., and name J.I.R., Sr. permanent managing conservator of his two boys, J.I.R. and J.R. At the time, D.V.R. was residing with her grandmother (A.V.) while J.I.R. and J.R. were residing with their father (J.I.R., Sr.).[3] D.V.R., J.I.R., and J.R. were thirteen, ten, and nine years old, respectively.

At trial, the evidence mainly centered on E.Y.R.'s ongoing drug abuse, failure to maintain employment, failure to provide a stable home environment for the children, cohabitation and continued relationship with an abusive partner, failure to maintain contact with her children, and lack of participation in court-ordered services. Key witness testimony is summarized below.

A.    **DFPS caseworker's testimony**

DFPS caseworker Melissa Martinez testified that the children had been removed from E.Y.R.'s home in March 2021 due to concerns regarding their safety, including E.Y.R.'s drug use, ongoing domestic violence in the home, and an overall unsafe and unstable environment. The same month, Martinez met with E.Y.R. to discuss the reasons for DFPS's involvement and to formulate a family service plan, which the trial court then ordered E.Y.R. to complete. During the subsequent service-plan meeting, Martinez reviewed its requirements with E.Y.R., which included taking parenting classes; undergoing a substance abuse assessment and a psychological assessment and

---

[2] H.G. is D.V.R.'s father; J.I.R., Sr., is J.I.R. and J.R.'s father.

[3] When it filed its petition, DFPS found reason to believe A.V. had neglectfully supervised the children by using cocaine in their presence and had had also physically and sexually abused J.I.R.; the boys did not wish to have any contact with A.V.

2

completing any recommended treatment flowing therefrom; attending parent-child visits; submitting to random drug testing as requested; maintaining stable housing; and attending domestic-violence classes. Martinez testified that she impressed upon E.Y.R. the importance of complying with services to regain custody of her children and that E.Y.R. indicated she understood. At their next meeting in May 2021, E.Y.R. stated had arranged an appointment for domestic-violence classes but had not yet started the classes. Martinez advised E.Y.R. she could attend parenting classes online, so long as the program was an accredited one. In terms of parenting classes, E.Y.R. ended up finally completing them in November 2022, on the second day of trial. As of November 2022, E.Y.R. had also undergone the substance-abuse and psychological assessments but had not followed up with the recommended services from the assessments. The recommended services, which E.Y.R. failed to complete, included domestic-violence classes, random drug testing, and inpatient substance-abuse treatment. Despite initially agreeing to residential treatment, E.Y.R. never submitted to inpatient services and consistently admitted using methamphetamines. E.Y.R. did not consistently submit to drug testing as required, and after she tested positive for methamphetamines in January 2022, she stopped submitting to drug tests.

Martinez described having difficulty maintaining contact with E.Y.R. during the pendency of the case due to E.Y.R.'s inconsistency. There were periods of time when E.Y.R. failed to maintain any contact with Martinez, which made it difficult to further assist her in receiving services, such as rental assistance, and to coordinate visitation with the children. For instance, E.Y.R. would call Martinez from a new phone number and would then cease all further contact with her. Moreover, E.Y.R.'s living situation was unstable. After moving out of her apartment, E.Y.R. moved in with her ex-boyfriend, "Mr. X.," for a period of three or four months, after which she began "couch surfing" between his apartment and her sister's house.

3

There was a history of domestic violence between Mr. X and E.Y.R., and Mr. X also had a history of dealing drugs and committing various other assaultive offenses. At the time of the trial, E.Y.R. was living with Mr. X. Martinez testified that E.Y.R. claimed she had "nowhere else to go," even though she could have sought refuge at a domestic-violence shelter. Overall, E.Y.R. demonstrated a history of unstable relationships with men.

With regard to visitation with her children, E.Y.R. was inconsistent, attending less than half of the scheduled visits scheduled throughout the case. Martinez repeatedly stressed to E.Y.R. the importance of maintaining regular visitation and how her lack of contact with the children created anger and resentment in them. Martinez advised E.Y.R. on how to address the children's hesitation and resentment toward her so that they could move forward in a positive manner. E.Y.R. would claim she would start attending visits but would then fail to attend. The last visit E.Y.R. attended was in August 2022, three months before the trial. J.I.R. and J.R. had not lived with E.Y.R. since 2017—at least half of their lives. Martinez agreed E.Y.R. had failed to maintain an active role in most of the boys' lives and that it was "not healthy for a child to have a parent that comes in and out, in and out, in and out[.]"

Martinez also explained that E.Y.R. received settlement funds from the death of her father and used the money to purchase a vehicle, which she no longer had, and purportedly invested in a business with her sister. Nonetheless, E.Y.R. remained unemployed. And after she received the money settlement, she stopped visiting her children and cut off contact with Martinez.

D.V.R. initially objected to termination of E.Y.R.'s parental rights, but by the time of trial, she indicated that she did not care whether termination happened or not. Martinez testified that D.V.R. had a close bond with A.V.; that D.V.R. trusted and confided in her; and that A.V. completed all services required, demonstrated "remarkable progress," and has the desire and

4

ability to provide a suitable home for D.V.R. Martinez testified that J.I.R. and J.R., who had been placed in their father's care for the past six months, "adore[ed]" him, joked with him, and trusted they could turn to him for anything they needed. J.I.R., Sr. had complied with all required services, demonstrated housing and financial stability, maintained consistent sobriety, and otherwise maintained regular contact with and cooperated with DFPS. As such, Martinez assessed that the boys were doing very well in their father's care. The three children shared a close bond, and Martinez agreed the court should order sibling visits at least once a week.

Ultimately, Martinez concluded that E.Y.R. did not "demonstrate[] an ability or an interest [in being] an appropriate caregiver or support for her children." She did not demonstrate an ability to "maintain a stable or safe home environment for herself, much less her children," nor had she remained sober.[4] Martinez opined that terminating E.Y.R.'s parental rights was in the children's best interest. CASA's assessment

Court-Appointed Special Advocates of El Paso's Program Supervisor Shirley Del Campo agreed with DFPS's placement recommendations and recommended termination of E.Y.R.'s parental rights. She added that D.V.R., who initially struggled with grades and attendance at school, was now doing very well and had significantly improved her grades, to "above average." Likewise, J.I.R. and J.R. were doing well since they were placed in their father's care, and presently, there were no concerns regarding J.I.R., Sr. E.Y.R.'s trial testimony

---

[4] On cross-examination by the children's attorney ad litem, Martinez stated she believed E.Y.R. would pose a threat to her children's well-being if her rights were not terminated; she also agreed that A.V. and J.I.R., Sr. could protect the children against E.Y.R. if the trial court granted the necessary injunctions. Martinez indicated that so long as E.Y.R.'s rights were not terminated, she could still seek custody of the children; she also testified that because A.V. was not to have contact with J.I.R. and J.R., any visits between D.V.R. and the boys would need to be supervised by E.Y.R. not A.V.

At trial, E.Y.R. opposed termination of her parental rights because she felt she had done "what [she] could" and "[m]ost of the time[,] it was out of [her] control." E.Y.R. testified she had, "[to] [her] understanding," completed all services required by DFPS. Still, she admitted that she had been using drugs for the past six years, that she knew she was required to submit to random drug tests but failed to do so because she was still using drugs, and that she failed to attend inpatient treatment to get her drug habit under control.[5]

E.Y.R.'s testimony also revealed a refusal to address her issues with domestic violence. For instance, on the one hand, she claimed she had "for the most part" attended her domestic-violence classes and that the provider had simply failed to provide her with a certificate of completion. But on the other hand, she also agreed the reason she did not receive a certificate was because she did not actually complete the classes. She also stated the family violence center had helped her with her apartment, but she no longer resided there; instead, she moved in with Mr. X, who she agreed was abusive to her and her children, though she insisted he did not use or sell drugs. E.Y.R. stated she would not deny that Mr. X called the children names like "fat ass" and "bitch" and called her the "F and B word," nor would she deny that D.V.R. was forced to call 911 to report Mr. X's abuse against E.Y.R. after the kids witnessed her "all bruised." E.Y.R. agreed it was "not good to expose the kids to that kind of violence" and that she did not want to see either of her boys "grow up becoming abusers because they saw their mom putting up with it" or D.V.R. "grow up being abused because she saw her mom put up with it[.]" Yet, E.Y.R. continued living with Mr. X., having refused to cut ties with him because he was supporting her. E.Y.R. agreed there were "a lot of opportunities for [her] to be in a safe environment," but she refused them.

---

[5] E.Y.R. claimed she was currently sober and had never used drugs in front of the children. However, she also agreed there was no way of knowing whether she was truly sober because she had refused to submit to the required testing.

E.Y.R. provided no explanation for her failure to obtain any type of employment. She explained she had a spinal injury that sometimes prevented her from working because she could not stand for a long time. However, she was adamant that she was still able to work and was currently seeking employment.[6] When E.Y.R. received a cash settlement of $68,000 in connection with her father's death, she claimed to have invested it in her sister's party-supply-rental business and in Mr. X's car business.[7] E.Y.R. admitted she "disappeared from everybody's radar for weeks and weeks" after she received the cash settlement and denied having spent the money on drugs. E.Y.R. claimed she soon would be moving into a new three-bedroom home. She remained unemployed.

When questioned about her earlier claim that things were "out of [her] control," E.Y.R. claimed she was referring to her ability to attend visits, stating she was "going through a lot of hardship and trying to get things put together with my sister and whatnot." She agreed that she could have taken a bus or asked Martinez for a ride so she could attend her visits but simply failed to do so. She disputed Martinez's claim that she had attended less than half of the scheduled visits but conceded she had only attended three visits between May and November 2022. E.Y.R. stated she "fell off and stopped going to visits" when "they stopped [A.V.'s] visits with the boys." When asked to explain why, E.Y.R. replied that "it just happened" and that it was "around that time that . . . [her] car [was] at the dealership and they needed . . . to fix it." Trial Court's Ruling and Issues on Appeal

---

[6] E.Y.R. disagreed with her counsel's suggestion that she was receiving disability benefits or any other type of compensation due to her back injury.

[7] E.Y.R. stated that she gave Mr. X $10,000 and gave her sister some other unspecified share of the money. E.Y.R. explained none of the money was in the bank and that it was "pretty much put to investment."

At the conclusion of the trial, the trial court terminated E.Y.R.'s parental rights as to the three children, finding that clear and convincing evidence supported termination based on subsections (D), (E), (N), (O), and (P) of Texas Family Code Section 161.001(b)(1). The trial court also found that terminating E.Y.R.'s parental rights was in the children's best interest. Raising five issues on appeal, E.Y.R. challenges the legal and factual sufficiency of the evidence to sustain termination on each of the statutory predicates. [8]

## II.     Applicable Law and Standard of Review

In this case, we address the natural rights of a parent to their children, which are of a constitutional magnitude but not absolute. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985). A court may order termination of the parent-child relationship if it finds by clear and convincing evidence: (1) that the parent committed one or more of the acts specifically set out in § 161.001(1) of the Texas Family Code; and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(A)-(U), (b)(2); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007. "To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best[-]interest finding—even if the trial court based the termination on more than one ground." *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019). However, when an appellant raises a sufficiency challenge to the findings made under the subsection D or E endangerment grounds, due-process and meaningful appeal considerations require that we address the sufficiency of the evidence on both grounds because of their far-reaching implications in

---

[8] E.Y.R. does not separately challenge that trial court's finding that termination was in the best interest of the children.

providing predicates for terminating a parent's right to their other children under Texas Family Code Section 161.001(b)(1)(M). *Id.* at 237; *In re L.D.C.*, 622 S.W.3d 63, 70 (Tex. App.—El Paso 2020).

In this review, we examine the legal and factual sufficiency of the evidence. Legal and factual-sufficiency reviews consider whether the evidence is sufficient to allow a factfinder to reasonably form a firm belief or conviction about the truth of the matter that must be proven. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (discussing both sufficiency standards). In a legal-sufficiency review, we consider all of the evidence in the light most favorable to the required finding and "determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id*. We give deference to the factfinder's conclusions, indulge every reasonable inference supporting the finding, and presume the factfinder resolved any disputed facts in favor of the findings. *In re L.D.C.*, 622 S.W.3d at 69. We disregard any evidence that a reasonable factfinder could have disbelieved or found to be incredible, but we do not disregard undisputed facts. *Id*.

In a factual-sufficiency review, the inquiry is likewise whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the challenged findings. *See In re J.F.C.*, 96 S.W.3d at 266. Importantly, we must not substitute our judgment for that of the factfinder. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must give due consideration to evidence that the factfinder reasonably could have found to be clear and convincing as well as "consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient when, in light of the entire record, the disputed evidence

9

that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction. *Id.*

## A. Predicate grounds D & E

Subsection D allows a court to terminate the parent-child relationship if the court finds clear and convincing evidence that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Subsection E allows termination under the same evidentiary standard when the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id*. § 161.001(b)(1)(E). Both grounds call for evidence that the parent endangered the child, i.e., exposed the child to injury or loss or jeopardized a child's emotional or physical health. *J.S. v. Texas Dep't of Fam. and Protective Servs.*, 511 S.W.3d 145, 159 (Tex. App.—El Paso 2014, no pet.).

Subsections D and E differ in terms of the source of the physical or emotional endangerment to the child. Subsection D requires a showing that the child's environment endangered his or her physical or emotional health. *Castaneda v. Texas Dep't of Protective and Regulatory Servs.*, 148 S.W.3d 509, 522 (Tex. App.—El Paso 2004, pet. denied). An environment that endangers the physical or emotional well-being of a child may be created by the conduct of the parent or by someone else in the home. *Id*. at 160. (citing *In re W.S.*, 899 S.W.2d 772, 776 (Tex. App—Fort Worth 1995, no writ)). "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *Id.* at 159. The child's physical or emotional well-being may be jeopardized by the parent's actions, omissions, and failure to act. *Id*. at 160 (citing *In re M.J.M.L.*, 31 S.W.3d 347, 351 (Tex. App.—San Antonio

10

2000, pet. denied)). While "endanger" means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment," it does not require that the conduct be directed at the child, that the child actually suffer injury, or that there even be a concrete threat of injury to the child. *Id.* at 159-60 (citing *Castaneda v. Texas Dep't of Protective and Regulatory Servs.*, 148 S.W.3d at 522 ; *In re M.J.M.L.*, 31 S.W.3d at 351).

Under subsection E, the direct cause of the danger to the child must be the parent's conduct, as evidenced by a voluntary, deliberate, and conscious course of conduct rather than a single act, omission, or failure to act. *Id.* (citing *Doyle v. Texas Dep't of Protective and Regulatory Servs.*, 16 S.W.3d 390, 394 (Tex. App.—El Paso 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.)). The specific danger to the child's well-being may be inferred from parental misconduct and need not be established as an independent proposition. *Id.* (citing *In re N.K.*, 99 S.W.3d 295, 300 (Tex. App.—Texarkana 2003, no pet.)). Moreover, parental conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

**B.      Best interest**

In addition to sufficient evidence on a statutory ground, a trial court's termination order must also rest on sufficient evidence that termination is in the child's best interest. *In re L.D.C.*, 622 S.W.3d at 72 (citing *In re B.C.S.*, 479 S.W.3d 918, 923 (Tex. App.—El Paso 2015, no pet.)). Preserving the parent-child relationship is strongly presumed to be in the child's best interest, but various factors may weigh against the presumption. *See id.* The child's best interest is rooted in the following nonexhaustive *Holley* factors: (1) the child's desires; (2) the child's emotional and physical needs now and in the future; (3) the emotional and physical danger to the child now and

11

in the future; (4) the parenting abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the child's best interest; (6) the plans for the child by those individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). A best-interest finding need not be predicated on proof of all of the *Holley* factors, nor on a specific set of these factors. *In re C.H. v. Texas Dep't of Fam. and Protective Servs.*, 389 S.W.3d 518, 523 (Tex. App.—El Paso 2012, no pet.). While no single factor is controlling, analyzing a single factor may be adequate in a particular factual situation to support a finding that termination is in the best interest of the child. *In re L.D.C.*, 622 S.W.3d at 72. The same evidence of acts or omissions used to establish the statutory predicate grounds for termination may also be probative of the child's best interest. *In re C.H.*, 389 S.W.3d at 523.

### III.    Analysis

In Issue One and Issue Two on appeal, E.Y.R. argues that the evidence is legally and factually insufficient to support the trial court's findings as to TEX. FAM. CODE ANN. § 161.001(b)(1)(D) and (E).[9] We disagree. Because the evidence relevant to the D and E grounds is interrelated, we address these grounds together. After that, we address the children's best interest.

### A.    D and E Grounds

In support of her claims that she neither engaged in conduct nor knowingly placed or allowed the children to remain in conditions that endangered her children's physical or emotional

---

[9] As we need not analyze more than the D and E grounds, we do not reach E.Y.R.'s Issue Three, Issue Four, or Issue Five. *See In re N.G.*, 577 S.W.3d at 232, 237 (Tex. 2019) (only one statutory termination ground and best interest will affirm parental termination on appeal; but if grounds D and E are bases for the termination, both should be reviewed due to future implications).

well-being, E.Y.R. points to A.V. as the source of the physical and sexual abuse of J.R. and what she characterizes as her nonoffender parent status with only possessory rights. Further, she emphasizes her testimony that "she never used illegal drugs in the presence of the children." But E.Y.R.'s narrow view of the record evidence fails to account for all of the surrounding circumstances in this case, including those occurring before and after removal of the children. *See In re L.D.C.*, 622 S.W.3d at 70-71 (rejecting appellant father's argument that mother's wrongful conduct against the child, who was not in appellant's care at the time DFPS began its investigation, should not be imputed to him because he was the nonoffending parent, and reasoning that appellant father's argument failed to account for all of the relevant evidence of all surrounding circumstances, including those occurring before and after removal of the children and not just those leading to DFPS's initial involvement).

As we have explained, DFPS is not required to prove that a parent's wrongful act was directed at or actually injured the child in question, and as such, it was not required to show E.Y.R. used drugs in the children's presence. *See J.S.*, 511 S.W.3d at 159-60. Again, E.Y.R.'s claim in this regard fails to account for all circumstances in this case, before and after the children were removed in March 2021. The focus of the trial evidence presented by DFPS in support of termination was her own conduct, not that of A.V.—the offending party in relation to the physical and sexual abuse of J.R. that formed part of the reason for DFPS's initial involvement in the case. As the sole judge of the weight and credibility of the evidence, the trial court could have found E.Y.R.'s denial of current drug use as self-serving and not credible. *See In re A.L.B.*, No. 04-21-00134-CV, 2021 WL 3516680, at *3 (Tex. App.—San Antonio Aug. 11, 2021, pet. denied) (mem. op). This is especially so where E.Y.R. failed to submit to required drug testing. *See In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied) (a trial court may infer from a

refusal to take a drug test that appellant was using drugs). But here, E.Y.R. admitted she was still using drugs.

Moreover, there was ample evidence showing E.Y.R. failed to address the issues leading to removal of the children in any meaningful way. For example, during the twenty months between the children's removal and the trial, E.Y.R. proved herself unwilling or incapable of ending her association with her physically and emotionally abusive ex-boyfriend. *See In re M.R.R.*, No. 10- 15-00303-CV, 2016 WL 192583, at *4-5 (Tex. App.—Waco Jan. 14, 2016, no pet.) (mem. op.) (considering mother's continued association with abusive partner, who had a history of domestic violence against her, as evidence supporting predicate grounds D and E); *In re K.A.S.*, 131 S.W.3d 215, 222 (Tex. App.—Fort Worth 2004, pet. denied) (abusive or violent conduct by someone in the child's household is an environment that endangers the child's physical or emotional well-being).

E.Y.R. failed to attend substance-abuse treatment, complete her domestic-violence classes, and take advantage of the domestic-violence center's rental assistance program. Despite insisting her spinal injury did not prevent her from working, she remained unemployed. And rather than focus on mending her relationship with her children and being a consistent presence in her children's lives, E.Y.R. was not there for them and did not visit them much. Martinez testified that E.Y.R. stopped attending visitation after she received the $68,000 cash settlement. E.Y.R. instead focused her resources on helping her sister and Mr. X with their businesses. E.Y.R. offered poor excuses for her noncompliance with the service plan and rejected any notion that she be held responsible for her actions and omissions, claiming it was all basically "out of [her] control," again, emphasizing she was busy "get[ting] things put together with [her] sister and whatnot."

E.Y.R.'s admissions that she had been addicted to methamphetamine for the past six years,

that she failed to submit to testing because of her continued drug use, and that she tested positive for methamphetamines in January 2022, all constituted conduct that exposed the children to injury or loss or otherwise jeopardized their emotional or physical well-being. *See In re M.R.R.*, 2016 WL 192583 at *5 ("A parent's illegal drug use and drug-related criminal activity may also support a finding that the child's surroundings endanger his or her physical or emotional well-being. And because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under [predicate ground (E)]. . . . A parent's continued drug use demonstrates an inability to provide for the child's emotional and physical needs and to provide a stable environment for the child.") (citation omitted); *see also In re R.W.*, 129 S.W. 3d at 739 (conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being).

Viewing the evidence in a light most favorable to the trial court's judgment, we conclude that a reasonable factfinder could have formed a firm belief or conviction that the trial court's findings under predicate grounds D and E were true. *See In re J.F.C.*, 96 S.W.3d at 266. Accordingly, we overrule E.Y.R.'s first and second issues.

**B.     Best interest**

In addition to a predicate termination ground, the trial court must find that termination of parental rights is in the children's best interest. *In re L.D.C.*, 622 S.W.3d at 72; *In re B.C.S.*, 479 S.W.3d 918, 923 (Tex. App.—El Paso 2015, no pet.). To determine a child's best interest, we review the entire record in light of the *Holley* factors. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). The same evidence may be probative of both a statutory predicate ground and a best-interest finding. *In re C.H.*, 389 S.W.3d at 523. Here, based on the evidence, the trial court could have reasonably found that termination was in the children's best interest.

E.Y.R.'s lack of parental abilities, as well as her conduct and omissions reflecting that her relationship with her children was not a proper one, were factors supporting that terminating E.Y.R.'s parental rights was in the children's best interest. *See Holley*, 544 S.W.2d at 372. As shown by the evidence supporting the trial court's findings that E.Y.R. endangered her children, E.Y.R.'s actions did not evince any motivation or desire for reunification with her children during the pendency of the case up until the date of trial. While Martinez reiterated the importance of maintaining consistent contact with the children and offered guidance on how to best address their resentment against her and hesitation in interacting with her, E.Y.R. was unwilling to address these issues in an effort to mend the parent-child relationship.

E.Y.R. did not sufficiently participate in services. Although she attended her initial assessments, she did nothing thereafter to achieve or maintain sobriety; she failed to complete her domestic-violence classes; and she failed to obtain employment. Thus, despite services that would have assisted in promoting her children's best interest, E.Y.R. did not avail herself of the help. *Id.* E.Y.R. offered no real explanation for her overall noncompliance with court-ordered services, supervised visitation, and random drug testing, which contributed to another factor the trial court could have weighed in favor of termination as a best-interest determination.

As for the children's desires, the evidence showed the children were happy in their current placements. D.V.R. even showed a marked improvement in her school attendance and grades, and she indicated she no longer cared whether her mother's parental rights were terminated. Further, the children's caretakers were cooperative with DFPS, facilitating frequent visitation between the children to maintain their close sibling bond. The evidence reflecting that the children's proposed placements would protect the children's emotional well-being is additional support for the finding that termination was in the children's best interest. *Id.*

16

The trial court could have reasonably found that the children's emotional and physical needs would be better served by their respective caretakers, that they would have a more stable home with them than if they remained in their mother's care, and that their mother's acts and omissions demonstrated her inability to maintain a proper parental relationship with her children. Considering the entire record in light of the *Holley* factors, we find that the trial court's best-interest finding rests on legally and factually sufficient evidence. *See In re L.D.C.*, 622 S.W.3d at 72-73 (applying *Holley* factors in light of entire record); *In re D.A.*, No. 02-15-0213-CV, 2015 WL 10097200, at *6 (Tex. App.—Fort Worth Dec. 10, 2015, no pet.) (mem. op.) (finding evidence of predicate ground E also probative of the children's best interest where children were thriving in their current placements and appellant mother failed to demonstrate any motivation or desire to reunify with her children, did not participate in services in any meaningful way, and generally lacked an ability to have a proper parental relationship with her children).

## IV.     Conclusion

We find that the ev*id*ence was legally and factually sufficient to terminate E.Y.R.'s rights on the statutory D and E grounds and determine that termination of her parental rights was in the children's best interest. Accordingly, we affirm the trial court's termination order.


LISA J. SOTO, Justice

March 16, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.


17